William M. Wilson and Dorothy Gwynne Wilson v. Commissioner.
Wilson v. Commissioner
Docket No. 24987.
United States Tax Court
1953 Tax Ct. Memo LEXIS 45; 12 T.C.M. (CCH) 1349; T.C.M. (RIA) 53377; November 30, 1953
*45 Held, the petitioners have failed to show that they incurred a loss in 1944 on the sale of residential property within the meaning of Sec. 23 (e) (2) of the Internal Revenue Code. William M. Wilson, Esq., R.F.D. #3, Sumter, S.C., pro se. A. F. Barone, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The respondent determined a deficiency in income tax of $703.40 against the petitioners, husband and wife, for the calendar year 1944. The question presented is whether an allowable loss was realized by petitioners from the sale of residential property within the meaning of section 23 (e) (2) of the Internal Revenue Code *46 . Findings of Fact William M. Wilson (hereinafter referred to as the petitioner) and Dorothy Gwynne Wilson are husband and wife and reside in Sumter, South Carolina. Their joint income tax return for the calendar year 1944 was filed with the collector of internal revenue at Columbia, South Carolina. In 1924 the petitioners bought a house and lot in Rock Hill, South Carolina, for use as their personal residence. They subsequently acquired an adjoining lot. Between 1924 and 1929 the petitioners resided on the property, and after they moved away in 1929 the property was rented in 1930 and 1931. In the latter year the petitioner's sister lived on the property for a short period of time. In 1938 the petitioners entered into a contract to sell the property for $5,000 to the nephew of William M. Wilson. As payment of the purchase price the nephew was to assume the obligation of three mortgages on the property and to execute a promissory note for the remainder of the purchase price. Although the nephew resided on the property, he made none of the agreed payments for its purchase until 1943 or 1944, at which time he made full payment and received a deed to the property from the petitioner. *47 At the same time he resold the property for a net amount of between $7,000 and $7,300. In their return for the calendar year 1944 the petitioners claimed a loss on the sale of $2,208, based on a fair market value for the house and lot of $8,000 less depreciation of $687.50. Opinion The Internal Revenue Code provides that in computing net income an individual may deduct any uncompensated loss incurred in a transaction entered into for profit, even though the transaction was not connected with the individual's trade or business. Section 23 (e) (2). Where the loss is on the sale of a residential property purchased by the taxpayer for use as his personal residence, the Treasury regulations require that in order for the transaction to be considered as one entered into for profit the property must prior to sale be rented or otherwise appropriated to income-producing purposes and be used for such purposes up to the time of the sale. The allowable loss deduction in such a transaction may not exceed "the excess of the value of the property at the time it was appropriated to income-producing purposes (with proper adjustment for depreciation) over the amount realized from the sale". Regulations *48 111, section 29.23 (e)-1. We think the respondent's determination to disallow the claimed deduction must be sustained for a number of reasons, but primarily because the petitioners have failed to carry their burden of proof in showing the determination to be erroneous. First, in order to be deductible, the loss must be shown to have been incurred in a transaction entered into for profit. In this respect the petitioner testified that in his opinion the property was worth $8,000 in 1938. Nevertheless, in that year, he entered into a contract to sell the property for $5,000 to his nephew. This he explained, testifying in his own behalf, by saying: "I think the property, I could have gotten had I tried to sell to an outsider, which I definitely would not do, I believe I could have gotten $8,000 for it at the time". He further stated, "The transaction took place in the family. I sold it to my nephew. In my opinion the property was well worth $8,000 when I turned it over to my nephew at $5,000…". Also, the petitioner said: "Now frankly I did not get out and try to sell the place * * * My nephew was pretty hard up at the time". This testimony, in our opinion, effectively negates a transaction *49 entered into for profit, and if the transaction was not one for profit no loss is allowable. Second, we are faced with deficiencies in proof as to the time the property was "appropriated to income-producing purposes". In his petition it is alleged that "In the year 1939, petitioners converted their former residence to business property and rented the same from that year until 1944 * * *." At the hearing the petitioner testified the property was first rented in 1930, and that in 1931 his sister lived in the house. From 1931 to 1938 when the contract of sale to the nephew was signed the record is nebulous as to the use to which the property was put. On this point we have only the following colloquy with the petitioner: "Q. When was this converted into income producing property? "A. I am afraid the Judge will have to say that. When I moved out, as well as I remember, it was rented sporadically, not to the family alone, first to Mr. and Mrs. Oakley. "THE COURT: What year was that? "THE WITNESS: 1930 and 1931, then it was vacant and then my sister lived there. I don't know how long, probably six months or a year. "THE COURT: Did she pay any rent to you? "THE WITNESS: As well *50 as I remember she did not. I think she kept up some of the buildings as payment and they, thinking she was going to buy it, whether there was a contract or not, spent money on it. * * *" Proof of this character falls far short of establishing that the property was being used for business purposes up to the time of the sale. Third, the petitioner has wholly failed to convince us that the respondent's determination that the property had a fair value of $5,000 at the time it was converted to business use is in error. In this respect his testimony was that he bought the property from his mother in 1924 for $2,750. He stated that he spent $9,000 on improvements between 1924 and 1929. Thereafter he made no improvements though he testified his sister also made some improvements while she lived in the house. The record nowhere gives any indication of the character of the improvements and the petitioner's testimony rests on no other basis than his own assertion. The only evidence of value introduced on behalf of the petitioner was his own opinion and that of his nephew to the effect that the fair value of the property in 1938 was $8,000. Neither the petitioner nor his nephew possessed any *51 expert knowledge of real estate values. The record contains no more than a passing reference to sales of comparative property in the vicinity and we can find no factual support for the opinion of either the petitioner or his nephew as to the property's fair market value. We have carefully considered the entire record in this case and after giving sympathetic attention to the petitioner's testimony and that of his nephew, can only conclude that the burden of showing that the valuation placed on the property in question by the respondent was incorrect has not been sustained. Decision will be entered for the respondent.